CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
AUG. 9, 2017
JULIA C. DUDLEY, CLERK
BY: s/ F. COLEMAN
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| ACA FINANCIAL GUARANTY CORPORATION AND UMB BANK, N.A.,<br><br>*Plaintiffs*,<br><br>v.<br><br>CITY OF BUENA VISTA, VIRGINIA, *ET AL*.,<br><br>*Defendants.* | CASE NO. 6:17–cv–00013<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This case is before the Court on two types of motions to dismiss. A bank (UMB Bank) and a bond insurer (ACA Financial) sued the City of Buena Vista and its recreational authority ("Authority"), asserting claims for breach of contract, fraud, and quasi-contract. The main dispute is whether the contracts at issue create an enforceable obligation on Defendants to repay Plaintiffs for refinancing a golf course in 2005. Arguing no obligation exists and that the other claims fail, Defendants seek dismissal for failure to state claim under Rule 12(b)(6).

Defendants also moved to dismiss under Rule 12(b)(7) for failure to join a necessary party. This motion pertains to two deeds of trust executed in favor of UMB Bank's predecessor. The deeds of trust pledged real estate as collateral in the event Defendants did not repay the bank. Defendants say that the trustees (who were residents of Virginia in 2005) are necessary parties whose presence would destroy the diversity jurisdiction of this Court. The current record, however, is insufficient to allow the Court to make a determination of that issue. Because that motion involves a colorable question of this Court's subject matter jurisdiction, the Court will order supplemental submissions on the Rule 12(b)(7) motion and defer its ruling on the Rule 12(b)(6) motion.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 19 addresses joinder of necessary parties, and Rule 12(b)(7) permits motions to dismiss for failure to join a necessary party. Usually, courts "are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir. 1999); *see Nat'l Union Fire Ins. Co. of Pittsburgh v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 250 (4th Cir. 2000) (noting dismissal "is a drastic remedy" that "should be employed only sparingly"). Courts approach the issue of joinder "pragmatically" and "in the context of the substance of each case." *Owens-Illinois*, 186 F.3d at 441.

In assessing a Rule 12(b)(7) motion, a court "must first ask whether a party is necessary to a proceeding because of its relationship to the matter under consideration pursuant to Rule 19(a)." *Owens-Illinois*, 186 F.3d at 440. Next:

> If a party is necessary, it will be ordered into the action. **When a party cannot be joined because its joinder destroys diversity**, the court must determine whether the proceeding can continue in its absence, or whether it is indispensable pursuant to Rule 19(b) and the **action**[1] must be dismissed.

*Id.* (emphasis added). While Rule 19 formally entails a two-step analysis under subparts (a) and (b), *id.*, it functionally entails a three-pronged analysis. 5C Wright & Miller, Fed. Prac. & Proc. Civ. § 1359 (3d ed.) (quoting *Paiute-Shoshone Indians of Bishop Cmty. of Bishop Colony v. City of Los Angeles*, 637 F.3d 993, 997 (9th Cir. 2011))

---

[1] The parties' briefs proceed on the assumption that the addition of non-diverse parties would result in dismissal only of particular claims rather than the entire case. The Court is not sanguine about that assumption, both because Rule 19 speaks in terms of dismissing the "action" (not discrete claims) and because jurisdiction and the requirement of complete diversity is typically an all-or-nothing affair.

First, a court must decide if the would-be party is necessary (or in the present verbiage of the Rule 19(a), "required").

Second, if the party is "required" or necessary, a court must determine if that party's addition would destroy jurisdiction.

Third, if the party would destroy jurisdiction,[2] the court must make an equitable assessment under Rule 19(b) "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."

## ANALYSIS

Although the background facts of this case are complicated, only a few of them are integral to the joinder issue. As one aspect of a multi-transaction undertaking in 2005 to refinance a golf course, Defendants executed separate deeds of trust for the benefit of what is now UMB Bank. These documents provided partial motivation for UMB Bank to purchase bonds issued by the Authority, thus infusing roughly $9 million into the golf course project.

The City's deed of trust secured various real estate owned by the City (including City Hall and the police department) as collateral in the event the City failed to meet certain conditions, chief among them repayment of the $9 million that UMB Bank was effectively loaning to Defendants. (*See* dkt. 1-5). The Authority's deed of trust—which contained substantively similar provisions—offered the golf course property (which the Authority owned) as collateral. (*See* dkt. 1-6).

The deeds of trust named Russell J. Singer and Douglas L. Sbertoli as trustees, which is to say Defendants legally transferred title in the secured properties to them. (Dkt. 1-5 at 3; dkt.

---

[2] If the prospective party would not destroy jurisdiction, then the party should be added.

1-6 at 3). Both trustees were recognized in 2005 as "resident[s]" of Chesterfield County, Virginia. (Dkt. 1-5 at 1; dkt. 1-6 at 1).

Plaintiffs assert claims against each Defendant for breaches of the respective deeds of trust. (Complaint ¶¶ 19–35, 83–101). They alleged that they are entitled to, among other things, "possession of the property pledged" by each deed of trust. (*Id*. ¶¶ 92, 101). They claim they have "an ownership stake" in those properties and seek appointment of a receiver to manage them until resolution of this case. (*Id*. ¶¶ 134–35, Prayer for Relief (h)). And they request other relief that would directly affect on the secured properties. (*Id*., Prayers for Relief (k)-(m)).

## I. Rule 19(a): The Trustees are Required Parties

The trustees are required if "the court cannot accord complete relief among existing parties" without them, Fed. R. Civ. P. 19(a)(1)(A); or if they have "an interest relating to the subject of the action and [are] so situated" that proceeding without them would practically impair or impede their ability to protect that interest, Fed. R. Civ. P. 19(a)(1)(B)(i); or if proceeding without them would—in light of their interest—subject an existing party to "substantial risk of incurring double, multiple, or otherwise inconsistent obligations." The Court must not apply these standards woodenly but rather grounds its analysis in the case's "substance." *Owens-Illinois*, 186 F.3d at 441. Because this is a diversity case governed by Virginia law involving deeds of trust, some observations about that substance are in order.

"The essential purposes of a deed of trust are two-fold: to secure the lender-beneficiary's interest in the parcel . . . and to protect the borrower from acceleration of the debt and foreclosure on the securing property prior to the fulfillment of the conditions precedent it imposes." *Mathews v. PHH Mortg. Corp.*, 283 Va. 723, 732 (Va. 2012). This two-sided protection is accomplished by the existence of the trustee, who holds title to the subject property:

His power to foreclose—that is, initiate transferring the property to the lender-beneficiary—"is conferred by the deed of trust" and "does not accrue until its conditions precedent have been fulfilled." *Id*. at 731.

This structure also reveals that "deeds of trust universally anticipate breach by non-payment." *Mathews*, 283 Va at 732. Hence, the fact of nonpayment "does not defeat an essential purpose of the contract. To the contrary, lenders require deeds of trust precisely because they contemplate the possibility of non-payment." *Id*. (internal quotations omitted).

In light of these principles, Virginia has long recognized that trustees to deeds of trust have actual interests that require their involvement in lawsuits regarding those deeds or the property they secure. Aside from possessing fiduciary duties to both the grantor and the beneficiary,[3] a "trustee holding the legal title is *always* a necessary party to *any suit wherein the trust subject is in litigation*, and it is error to enter a decree disposing of the trust subject in his absence as a party." *Fisher v. Dickenson*, 84 Va. 318, 4 S.E. 737, 742 (Va. 1888) (emphasis added).

For instance, the Supreme Court of Virginia once found it erroneous to sell a decedent's real property before the trustee to a deed of trust covering it was added to the suit, because the trustee "was a necessary party." *Conrad's Adm'r v. Fuller*, 98 Va. 16, 34 S.E. 893, 894 (Va. 1900). The Supreme Court held similarly regarding a city's effort to enforce a tax lien against land, concluding that—because the trustee was a necessary party who was not part of the city's lawsuit—"that proceeding is necessarily void" as to him. *Jennings v. City of Norfolk*, 198 Va. 277, 278, 281, 287 (Va. 1956); *see also Walt Robbins, Inc. v. Damon Corp.*, 232 Va. 43, 47 (1986) (holding that trustees "who hold bare legal title to the land" at issue were necessary

---

[3] "The Supreme Court of Virginia has repeatedly explained that deed of trust trustees have fiduciary duties." *Jaldin v. ReconTrust Co.*, 539 F. App'x 97, 102 (4th Cir. 2013).

parties). These holdings are buttressed in part by principles of due process. *See Synchronized Const. Servs., Inc. v. Prav Lodging, L.L.C.*, 288 Va. 356, 364 (Va. 2014) (compiling cases); *James T. Bush Const. Co. v. Patel*, 243 Va. 84, 87 (Va. 1992) (surveying cases and observing that "principles of due process" bear on necessity of trustee).

Other Virginia cases also hold that trustees are needed in lawsuits to recover mechanic's liens on real property. *Synchronized Const.*, 288 Va. at 364–65; *Glasser & Glasser, PLC v. Jack Bays, Inc.*, 285 Va. 358, 371 (Va. 2013); *see also Synchronized Const.*, 288 Va. at 366 (observing that trustee was "no longer" necessary once mechanic's lien had been bonded off, resulting in property being "no longer encumbered"). "If legal title is vested in the trustee"—as it is here (dkt. 1-5 at 1, 1-6 at 1)—"and the property is to be sold free of the trust lien, the chancellor must have jurisdiction over the person of the trustee before he can enter a decree divesting him of title." *Walt Robbins*, 232 Va. at 48.

These cases evince the importance of the trustees, who—by virtue of the deeds of trust—possess both duties and substantive interests, not the least of which is their retention of legal title in the secured property. *James T. Bush*, 243 Va. at 87; *Walt Robbins*, 232 Va. at 48; *Fisher*, 84 Va. 318, 4 S.E. at 742.

At oral argument, Plaintiffs essentially conceded the necessity of the trustees under Rule 19(a)(1)(A), stating that "when we get to the remedy stage, correct [we could not foreclose without the trustees, so] we would involve the trustees. But that's not where we are right now." (Rough Tr. at 8 (on file in chambers)). That is, Plaintiffs admit that if they ultimately prevail on the merits, the Court cannot accord them the "complete relief" they seek without the trustees' involvement. The trustees are entitled to have a hand in this litigation before such a late juncture. Plaintiffs have filed a lawsuit: (1) alleging two counts for breach of deeds of trust; (2)

asserting the right to possess the property pledged by each deed of trust; (3) claiming an "ownership stake" in those properties; and (4) seeking to appoint a receiver to effectively take over those properties. (Complaint ¶¶ 92, 101, 134–35, Prayer for Relief (h)). As the current titleholders of the properties with fiduciary duties to both parties and who are bound by the terms of the deed of trust, the trustees are needed, both to accord full relief to the parties and to protect their own rights and obligations relating to "the subject of the action," *e.g.*, the deeds of the trust and the secured property. Fed. R. Civ. P. 19(a)(A)-(B)(i).[4]

Plaintiffs' arguments to avoid this result are not persuasive. Their primary argument is that the deeds of trust permit UMB Bank to maintain its own lawsuit. It is true that § 4.6 in each deed of trust allows UMB Bank to file, upon an event of default, lawsuits "for the collection of the sums . . . due and unpaid." But it does not logically follow that the trustees are not necessary under Rule 19 just because UMB Bank has contractual authority to file a lawsuit seeking unpaid money. Contractual permission to file suit does not change the legal reality that the trustees remain titleholders of the secured properties, or assuage their interests and obligations pertaining the deeds of trust or properties. At the very least, Plaintiffs have not identified any binding Virginia or Fourth Circuit case endorsing their position. And it is telling that § 4.6 bears upon lawsuits to recover money, not—as critically relevant to the trustees—efforts to take possession of, transfer, or sale the secured property.[5]

---

[4] Indeed, to wait to involve them in the case may very well create duplicative or multiplicative proceedings, because, depending on how the Court decides the merits, further litigation will be needed to force the trustees to transfer title. (Dkt. 19 at 8; *see* Fed. R. Civ. P. 19(a)(1)(B)(ii)).

[5] Plaintiffs also cite § 4.8. That section is a lengthy provision incorporating the rights and remedies of secured creditors under the Virginia U.C.C., the meaning and import of which Plaintiffs do not attempt to explain. It is not the Court's task to fashion Plaintiffs' argument for them. *See Williams v. Ozmint*, 716 F.3d 801, 809 n.12 (4th Cir. 2013); *Greene v. Cty. of Durham*

Additionally, Plaintiffs attempt to factually distinguish Defendants' lead case on the trustees' necessity, *Fisher v. Dickenson*, 84 Va. 318, 4 S.E. 737 (Va. 1888), observing that it was a "far-cry from the situation in this case." But that is a distinction without a difference, as what is illustrative from *Fisher*—and the slew of Virginia cases cited above—is the legal principle that the trustees have something legitimately at stake, and that to dispose of, burden, or otherwise litigate about the secured property or deeds of trust requires their presence.

For the above reasons, the Court concludes that the trustees are necessary parties to this lawsuit.

## II. Subject Matter Jurisdiction: The Trustees Citizenship is Unclear

The Court must next assess whether the addition of the trustees to the case would destroy diversity jurisdiction. Defendants are citizens of Virginia. (Complaint ¶¶ 3–4).[6] So if the trustees are also citizens of Virginia and are added to the case as plaintiffs,[7] diversity jurisdiction would be destroyed. Defendants' argument on this score assumes that the deeds of trust establish the trustees' Virginia citizenship, but that assumption is unwarranted on the current record.

First, both deeds of trust state that the trustees are *residents* of Virginia. (Dkt. 1-5 at 1; dkt. 1-6 at 1). The diversity statute, however, concerns itself with "citizens." 28 U.S.C. § 1332(a). As the Fourth Circuit recently reiterated, residency is not synonymous with citizenship.

---

*Office of Sheriff Dep't*, No. 1:14-CV-153, 2014 WL 5465371, at *5 n.3 (M.D.N.C. Oct. 28, 2014) (compiling Fourth Circuit cases). Moreover, § 4.8 is "subject to the secured interest created by this Deed of Trust" (thus implicating the trustees), and applies only to "personal property" (which is not, on the facts alleged, relevant to this case).

[6] *See Moor v. Alameda Cty.*, 411 U.S. 693, 718–22 (1973) (holding that county was a citizen of the state it is in, rather than an arm of the State itself and thus not a citizen for diversity purposes); *Daughtry v. Arlington Cty., Va.*, 490 F. Supp. 307, 309–11 (D.D.C. 1980) (holding that Virginia county was citizen of Virginia for diversity purposes).

[7] Defendants argued that the trustees would be aligned as plaintiffs if added (dkt. 9 at 20–21), and Plaintiffs did not contest that assertion in their briefs. (*See* dkt. 17 at 9–13).

"A resident intends to live in the place for the time being and a citizen has an intention to remain in the state indefinitely. Therefore, for purposes of diversity jurisdiction, residency is not sufficient to establish citizenship." *Scott v. Cricket Communications, LLC*, -- F.3d --, No. 16-2300, 2017 WL 3197548, at *3 (4th Cir. July 28, 2017) (internal citations and quotations omitted).

Second, the Deeds of Trust were executed in 2005, over twelve years ago. But it is "hornbook law . . . taught to first-year law students in any basic course on federal civil procedure" that "jurisdiction of the court depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570–71 (2004). So even if the Trustees' residency in Virginia was pertinent to their citizenship, that information is stale. The relevant date is when this case was filed in 2017 (or perhaps the date the Trustees would be added as parties), not 2005.

In sum, to find that the Trustees would destroy jurisdiction, the Court would have to assume (1) that in 2005, they resided in Virginia *and* intended to remain there indefinitely, as well as (2) that such presence and intention exist presently. There is currently no basis in the record to find or infer either of these facts. Dismissal under Rule 12(b)(7) is strong medicine, *Nat'l Union Fire Ins. Co. of Pittsburgh v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 250 (4th Cir. 2000), so the Court will not lightly assume that the trustees will destroy diversity.

Nevertheless, a court has an obligation to ensure itself that it has jurisdiction over a case. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011); *Quinn v. Haynes*, 234 F.3d 837, 842 (4th Cir. 2000). Moreover, the trustees' citizenship must be definitely ascertained in order to decide whether to simply add them as parties or whether the case must potentially be

dismissed. Accordingly, the parties will be ordered to make supplemental submissions addressing the trustees' citizenship.

## III. Rule 19(b): Feasibility of Proceeding without the Trustees

Because the Court cannot now determine whether the trustees are citizens of Virginia, it does not know if it needs to undertake a Rule 19(b) indispensability analysis. The parties' briefs devote little attention to the issue. Rule 19(b) sets out four, non-exclusive factors the Court should weigh when assessing, "in equity and good conscience," whether the action should proceed without the potentially non-diverse trustees or whether it should be dismissed.[8]

Defendants analyze only the fourth factor, whether there is an adequate alternative remedy. They assert that there is one (state court), as proven by the parties' previous litigation in state court (with the presence of the trustees) until Plaintiffs nonsuited the case in February 2017.

---

[8] Rule 19(b) reads in full:

**(b) When Joinder Is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

**(1)** the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

**(2)** the extent to which any prejudice could be lessened or avoided by:

**(A)** protective provisions in the judgment;
**(B)** shaping the relief; or
**(C)** other measures;

**(3)** whether a judgment rendered in the person's absence would be adequate; and

**(4)** whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

(Dkt. 9 at 22). For their part, Plaintiffs do not squarely address any of the Rule 19(b) factors. (*See* dkt. 17 at 12). The Court will therefore accept supplemental briefing on this issue.

## IV. Issues for Supplemental Briefing

In accordance with the foregoing, the parties will be ordered to address the following issues in supplemental filings:

(1) Whether trustees Russell J. Singer and Douglas L. Sbertoli are currently citizens of Virginia, and whether they were so on the date this lawsuit was filed;

(2) Whether—assuming the Virginia citizenship of at least one trustee—the trustees are indispensible parties after analysis of the Rule 19(b) factors; and

(3) Assuming a hypothetical Virginia trustee is indispensible under Rule 19(b), may the Court dismiss anything less than the entire "action"? *See* Fed. R. Civ. P. 19(b).

Defendants are permitted to file a single, joint brief addressing these issues, limited to 12 pages, with permission to attach evidence in support of their position on Issue (1). Plaintiffs' joint brief is subject to the same restrictions. The briefs will be due on August 25 days.

An appropriate order will issue. The clerk of court is requested to send a copy of this opinion and the accompanying order to counsel of record.

Entered this __9th__ day of August, 2017.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE